IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TYRONE SWAN,

   Petitioner,

v.

WARDEN ROKOSKY,[1]

   Respondent.

Civil Action No.: SAG-24-1973

## MEMORANDUM OPINION

Petitioner Tyrone Swan, a federal inmate, seeks an Order setting aside the Department of Justice's Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") Assessment system and having 110 days of his earned time credits under the First Step Act applied to his sentence. ECF 1. Plaintiff's Complaint was docketed as a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.[2] Respondent filed a Response in Opposition to the Petition.[3]

---

[1] The proper respondent in a § 2241 proceeding is the Petitioner's custodian. 28 U.S.C. § 2242. Swan is confined at the Federal Correctional Institution-Cumberland, under the custody of Warden Rokosky. The Clerk is directed to amend the docket to substitute Warden Rokosky for Department of Justice as the Respondent.

[2] Swan filed a Motion to Reconsider the construction of his initial pleading as a Petition for Writ of Habeas Corpus, ECF 4, asserting that he intended to file a civil complaint seeking relief in equity pursuant to 28 U.S.C. § 1331 and 5 U.S.C § 702. His motion to reconsider is denied. Swan seeks application of 110 earned FSA time credits, ECF 1 at 3, and a challenge to the fact or length of a Petitioner's confinement is properly construed as a Petition for Writ of Habeas Corpus under 28 U.S.C. §2241. *See Preiser v. Rodriguez*, 411 U.S. 475, 499–500 (1973). Even if Swan had properly complied with the process for having his claim evaluated under the Administrative Procedures Act, moreover, the APA does not apply to BOP's inmate recidivism calculations. *See Newell v. Fikes*, 2023 WL 2543092, at *1–3 (S.D. Ga. Feb. 21, 2023) (BOP determination of inmate's recidivism risk level was not subject to judicial review because it fell within 18 U.S.C. § 3625); *see also Pelissero v. Thompson*, 170 F.3d 442 (4th Cir. 1999) (noting that "Congress entrusted the decision whether to grant inmates early release…solely to the discretion and expertise of the BOP").

[3] The Government docketed its response as a "response to order to show cause order and motion to dismiss or in the alternative, for summary judgment." This Court will construe the response as a response to the

ECF 8. Swan replied. ECF 10. Having reviewed the Petition, Motion, Response, and Reply, this Court finds that no hearing is necessary. Local R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court will grant Respondent's Motion.

I.    BACKGROUND

Swan was convicted of conspiracy to distribute heroin and fentanyl in violation of 18 U.S.C. § 846 in the Western District of Pennsylvania, and he is currently serving a 75-month sentence of imprisonment. ECF 8-1 at ¶ 3; *Id.* at 6. His projected release date is August 27, 2026. *Id.* at ¶ 4..

Swan was found eligible to earn time credits on January 24, 2023. *Id.* ¶ 5; *Id.* at 9. Since entering BOP, he has had six risk assessments under PATTERN. *Id.* at ¶ 6. At each, he was evaluated as a high- or medium-risk inmate. *Id.* at 12–22. According to BOP, Swan had accrued 170 days of time credits as of July 29, 2024. *Id.* at ¶ 8. Swan asserts that as of March 2, 2024, he had earned 110 days of time credits which he wishes to have "applied so as to reduce his sentence under 18 U.S.C. § 3624(g)." ECF 1 at 3.

PATTERN assigned him a base general score of 55 and violent score of 26. *Id*. By participating in programs during his incarceration, he reduced his scores to 45 for general and 22 for violent, resulting in his achieving a medium recidivism risk score. *Id*. Swan maintains that even if he earned every reduction point available to him during his remaining period of incarceration, the lowest his scores could go would be a general score of 41 and a violent score of 20, which would still leave him at medium risk of recidivism and unable to have time credits applied to his sentence. *Id.* Accordingly, Swan argues that he does not "have a meaningful opportunity to reduce [his] classification during the period of incarceration" and therefore,

---

petition itself. Accordingly, Swan's motion to strike the Government's reply, ECF 11, as an unauthorized surreply, ECF 12, will be granted.

PATTERN does not comply with 18 U.S.C. §3532(a)(5)(A) and violates the Administrative Procedures Act. *Id*.

Respondent provides an overview of the statutory and policy framework around the First Step Act, which was passed on December 21, 2018, and amended 18 U.S.C. §§ 3621, 3624. ECF 8 at 15–20. The First Step Act required the Attorney General to:

> (1) conduct a review of the existing prisoner risk and needs assessment systems in operation on the date of enactment of this subchapter;
>
> (2) develop recommendations regarding evidence-based recidivism reduction programs and productive activities in accordance with section 3633;
>
> (3) conduct ongoing research and data analysis on—
>
>> (A) evidence-based recidivism reduction programs relating to the use of prisoner risk and needs assessment tools;
>> (B) the most effective and efficient uses of such programs;
>> (C) which evidence-based recidivism reduction programs are the most effective at reducing recidivism, and the type, amount, and intensity of programming that most effectively reduces the risk of recidivism; and
>> (D) products purchased by Federal agencies that are manufactured overseas and could be manufactured by prisoners participating in a prison work program without reducing job opportunities for other workers in the United States;
>
> (4) on an annual basis, review, validate, and release publicly on the Department of Justice website the risk and needs assessment system, which review shall include—

>    (A) any subsequent changes to the risk and needs assessment system made after the date of enactment of this subchapter;
>    (B) the recommendations developed under paragraph (2), using the research conducted under paragraph (3);
>    (C) an evaluation to ensure that the risk and needs assessment system bases the assessment of each prisoner's risk of recidivism on indicators of progress and of regression that are dynamic and that can reasonably be expected to change while in prison;
>    (D) statistical validation of any tools that the risk and needs assessment system uses; and
>    (E) an evaluation of the rates of recidivism among similarly classified prisoners to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups, in such rates;
>
> (5) make any revisions or updates to the risk and needs assessment system that the Attorney General determines appropriate pursuant to the review under paragraph (4), including updates to ensure that any disparities identified in paragraph (4)(E) are reduced to the greatest extent possible;

18 U.S.C. § 3631(b)(1)–(5).

The Attorney General developed the PATTERN tool in consultation with the Director of the BOP, the Director of the Administrative Office of the United States Courts, the Director of the Office of Probation and Pretrial Services, the Director of the National Institute of Justice, the Director of the National Institute of Corrections, and the Independent Review Committee. *See* U.S. Dep't of Justice, The First Step Act of 2018: Risk and Needs Assessment System 4 (2019). PATTERN uses both static and dynamic factors associated with a prisoner's risk of recidivism and is reviewed and validated annually as required by 18 U.S.C. § 3631(b)(4). *Id.*

PATTERN uses fifteen variables to create a score for general recidivism (a return to BOP or a re-arrest within three years of release), and one to create a score for violent recidivism (a re-arrest for a suspected act of violence within three years of release from custody). *See* U.S. Dep't of Justice, 2020 Review and Revalidation of The First Step Act Risk Assessment Tool 2 (2021).[4]

---

[4] The fifteen variables are: (1) age at the time of assessment; (2) infraction convictions within the last 120 months; (3) infraction convictions for serious and violent acts during current incarceration; (4) whether the

4

The factors combine static and dynamic factors. *Id.* At least half of the factors are dynamic, including work programming, drug treatment while incarcerated, program completions, and financial responsibility. *Id.*

Respondent agrees that Swan's Complaint should be construed as a habeas petition, and argues that his petition should be denied because his PATTERN score was correctly calculated, the BOP's determination that he was ineligible to apply FSA time credits is not reviewable, he failed to state a claim for relief, he has a "meaningful opportunity to reduce" his recidivism risk level, and he is not entitled to mandamus or injunctive relief. ECF No. 8.

### III.   ANALYSIS

#### I.   Habeas Petition

To be entitled to the issuance of a writ of habeas corpus, a prisoner must show that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c); *Estelle v. McGuire*, 503 U.S. 62, 67–68 (1991). The BOP administers federal inmates' sentences. *See* 18 U.S.C. § 3621; *United States v. Wilson*, 503 U.S. 329, 335 (1992). This includes determining where an inmate serves his sentence and his time credits. *See* 18 U.S.C. § 3621(b); *Wilson*, 503 U.S. at 335. "A claim for credit against a sentence attacks the computation and execution of the sentence rather than the sentence itself." *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989). Such challenges must be brought in a petition for habeas corpus relief under 28 U.S.C. § 2241 in a prisoner's district of confinement. *Id.*; *Fontanez v. O'Brien*, 807 F.3d 84,

---

prisoner being assessed is infraction free; (5) whether the prisoner is free of any violent or serious infractions; (6) completion of programming; (7) programming for technical and vocational training; (8) drug treatment while incarcerated; (9) noncompliance with financial responsibility; (10) whether the instant offense is violent; (11) whether the prisoner is a sex offender; (12) criminal history (13) history of violence; (14) history of escapes; and (15) education score. ECF 8 at 19–20.

87 (4th Cir. 2015) (recognizing "attacks on the execution of a sentence are properly raised in a § 2241 petition.") (internal quotation and citation omitted).

The First Step Act allows inmates to earn early release credits for participation in certain programming. 18 U.S.C. § 3621(h). Liberally construing the Petition, Swan contends that PATTERN violates his rights because he will not be able to reduce his recidivism score low enough for his time credits to ever be applied to his sentence. Swan is eligible to receive earned time credits because his conviction is not a disqualifying offense, but due to his medium PATTERN score, he cannot have those earned time credits applied to his sentence. 18 U.S.C. § 3624(g)(1)(B) (eligible prisoners have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment."). As a practical matter, he will not be able to lower his risk level enough to use his credits before his release date in 2026.

Swan's position that the Attorney General via the BOP has failed to devise a recidivism risk assessment system that allows him a meaningful opportunity to reduce his risk assessment from medium to low is unavailing. Swan has lowered his PATTERN score during his time of incarceration. Indeed, the reason he will not be able to lower his score enough to use his credits is his release in the relatively near future. To the extent that Swan takes issue with the requirement of achieving minimum or low recidivism risk scores prior to having his earned credits applied to his sentence, his challenge is to the statute and not the regulation. The BOP's use of the PATTERN tool to restrict application of First Step Act credits to prisoners with minimum or low risk recidivism scores does not amount to an agency's "interpretation" of a statute. Rather, the BOP has done what Congress commanded it to do: create a method by which it can be determined whether a prisoner is likely to recidivate and to withhold FSA credits until that likelihood is

6

diminished to a minimum or low risk. Further, that Swan may not be able to achieve a level that would allow the credits to be applied to his sentence before his term of imprisonment expires does not demonstrate that the PATTERN scoring system is improper. *See Green v. Hudson*, 2024 WL 960497, at *4 (10th Cir. 2024) (holding that the BOP's inclusion of static factors in PATTERN did not deprive inmates of a "meaningful opportunity to reduce their classification during the period of incarceration").

II. Due Process

Swan also argues his right to due process has been violated by the failure to apply his earned time credit. He cannot prevail here either. Generally, when considering a denial of Due Process claim, courts "first ask whether there exists a liberty or property interest of which a person has been deprived, and if so, we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Swan does not have a liberty interest in First Step Act time credits. *See White v. Warden*, 2023 WL 4867562, at *10 (D. Md. July 31, 2023) (explaining that unlike inmates who earn good time credits, "prisoners who earn [First Step Act credits] may not be able to apply those[credits.] 18 U.S.C. § 3624(b)(10(D). Instead, application of [First Step Act credits] is contingent on maintaining a minimal or low risk of recidivism as assessed by the BOP or, alternatively, on being granted an exception to that requirement form the warden…."). Given that there is no protected liberty interest in the discretionary application of FSA time credits, Swan has failed to state a constitutional claim and his claim must be dismissed.

III. Injunctive and Mandamus Relief

Lastly, Swan argues that he is entitled to injunctive or mandamus relief. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto*

*Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), *see also SAS Inst., Inc. v. World Programming Lmtd*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong test is "a high bar, as it should be."). A party seeking a preliminary injunction or temporary restraining order must establish (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts should only grant preliminary injunctive relief involving the management of correctional institutions under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

Swan has failed to make the requisite showing. As discussed above, he failed to demonstrate that he is likely to succeed on the merits. Swan also offers no argument that the balance of equities tips in his favor or that an injunction is in the public interest. As such, his request for injunctive relief must be denied.

His request for mandamus relief also fails. Federal district courts have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or one of its agencies to perform a duty owed to a petitioner. 28 U.S.C. § 1361. To meet the requirements for mandamus relief, a petitioner must show that he has the clear legal right to the relief sought, that the respondent has a clear legal duty to do the particular act requested, and that no other adequate remedy is available. *See In re First Fed. Savings and Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988). If a petitioner fails to show any of these prerequisites, a district court lacks jurisdiction under 28 U.S.C. § 1361. *See Nat'l Ass'n of Gov't Emps. v. Fed. Labor Relations Auth.*, 830 F. Supp. 889, 898 (E.D. Va. 1993). Swan has not shown that no other adequate remedy is available. A habeas petition under 28 U.S.C. § 2241 is an alternative means by

which Swan can gain the relief requested, and the Court has construed this case as such a petition. A writ of mandamus cannot issue where there are alternative means for relief. *In re Propst*, 19 F. App'x 132 (4th Cir. 2001) (denying a petition for writ of mandamus because a writ of habeas corpus was the proper vehicle for contesting the issue). Additionally, as noted above, Swan has not demonstrated that he has the clear legal right to the relief sought. As such, Swan's request for mandamus relief is denied.

## IV.    CONCLUSION

For the reasons set forth above, the Court will deny the Petition. A separate Order follows.

Date    February 27, 2025

/s/
Stephanie A. Gallagher
United States District Judge